"**Third Party Collateral**" shall have the meaning set forth in Section 4.A.

"**Third Party Collateral Account**" means individually and collectively, each securities brokerage account maintained with Broker and identified on Schedule A hereto and that is pledged to Bank as Third Party Collateral pursuant to this Pledge Agreement, together with the successors to those identified accounts, irrespective of whether the successor account bears a different name or account number, and for greater certainty, each such securities brokerage account shall be deemed to be a "Collateral Account" under and for the purposes of the LAL Agreement.

"**Third Party Pledgor**" shall have the meaning set forth in the preamble above; provided that if there is more than one Third Party Pledgor, the term shall refer to each such Person individually and to all such Persons collectively.

"**Total Advance Limit**" means the line of credit advance limit set by Bank when a Liquidity Access Line is activated, which may be adjusted from time to time in Bank's sole discretion (including, without limitation, based on the maximum lending value of the Collateral (as defined in the LAL Agreement) and Third Party Collateral) and that is used to determine the maximum amount of credit available to Borrower under the Liquidity Access Line, the Interest Spread and/or the Letter of Credit Fees on a Liquidity Access Line.

"**Uniform Commercial Code**" means the Uniform Commercial Code as enacted in the State of New York, as amended from time to time.

## 2. General

A. Schedule A to this Pledge Agreement describes: (a) each Third Party Collateral Account subject to this Pledge Agreement and forming part of the Third Party Collateral; (b) the Liquidity Access Line for which Third Party Pledgor is executing this Pledge Agreement; and (c) each Borrower on the Liquidity Access Line. **Section 11 below (Dispute Resolution) includes a waiver of a number of rights, including the right to bring a lawsuit in court, to serve as a representative in a class action and the right to a jury trial. That section describes the procedure Third Party Pledgor must follow if Third Party Pledgor desires to reject the Dispute Resolution section.**

B. Third Party Pledgor acknowledges and agrees as follows:

(1) Using securities as collateral for a loan involves a high degree of risk that is not for everyone. For example, (i) if the securities in the Third Party Collateral Account decline in value, (ii) Bank changes advance rates with respect to any securities forming part of the Third Party Collateral as provided in the LAL Agreement, (iii) the value of any Other Collateral declines, or (iv) a Stated Event (as defined in the LAL Agreement) under the LAL Agreement occurs, Bank can take action, without prior notice to Third Party Pledgor, to protect or maintain value in the Collateral Account or to otherwise satisfy the LAL Obligations. Such action may include selling assets in the Third Party Collateral Account. Third Party Pledgor should not enter into this Pledge Agreement unless Third Party Pledgor has independently determined that this transaction, including the risks involved, is suitable for Third Party Pledgor.

(2) Bank, in its sole discretion, may determine whether the value and type of Third Party Collateral in the Third Party Collateral Account is sufficient collateral for the Liquidity Access Line as provided in the LAL Agreement. While Bank may attempt to notify Third Party Pledgor regarding any deficiency with respect to the Third Party Collateral in the Third Party Collateral Account, Bank is not obligated to do so. Bank may, in its sole discretion, liquidate Collateral in the Third Party Collateral Account to satisfy the collateral requirements for the Liquidity Access Line, as a result of a demand by Bank pursuant to the LAL Agreement or as a result of a Stated Event (as defined in the LAL Agreement) under the LAL Agreement, without notice to Third Party Pledgor and without first requesting additional collateral from Third Party Pledgor or Borrower.

(3) Liquidation of Third Party Collateral in the Third Party Collateral Account may cause Third Party Pledgor to recognize taxable income or to report losses for tax purposes, or to become subject to other potentially adverse effects such as short swing profit liability under applicable securities laws. Bank may perform such transactions, to the extent permitted by applicable law, without prior notice or advertisement on the market where such business is usually transacted, at a public auction or in a private sale, including transactions with Bank, Broker or their Affiliates for their own account. To the extent permitted by applicable law, Third Party Pledgor waives any right to redeem the proceeds of such transactions without Bank's consent and agrees not to hold Bank liable for taking such actions. Without limiting the foregoing, Third Party Pledgor waives, to the extent permitted by applicable law, any right to the notice of sale of Third Party Collateral, advertisement of such sale and any related provisions of applicable law, including, but not limited to Article 9 of the

For Morgan Stanley Private Bank, National Association Use Only

WHITNEY J SLATEN
BORROWER NAME
WARREN C SLATEN and SYBIL SLATEN
THIRD PARTY PLEDGOR NAME

LENLALTP   LAL
ID: 290748

263-045204-724
LAL NUMBER

THIRD PARTY PLEDGE AGREEMENT
(05/2018)
Page 3 of 15
NY CS 9180884 05/18
263-045204-724

Uniform Commercial Code enacted in the State of New York, or any other comparable law, rule or regulation of any applicable jurisdiction.

(4) **None of Bank's, Broker's nor Third Party Pledgor's financial advisor ("Financial Advisor") or private wealth advisor ("Private Wealth Advisor"), as applicable, provides tax or legal advice.** Third Party Pledgor should consult Third Party Pledgor's own attorney, tax advisor or accountant in order to protect its own interests (which may be different than those of Borrower) for matters involving taxation, tax planning, personal trusts and estate planning or the legal consequences of entering into this Pledge Agreement and by signing this Pledge Agreement, Third Party Pledgor acknowledges and agrees that it has had adequate opportunity to consult with its attorneys, tax advisors and accountants to its satisfaction.

(5) NOTWITHSTANDING ANY ADVISORY RELATIONSHIP THAT THIRD PARTY PLEDGOR MAY HAVE WITH BROKER IN CONNECTION WITH THE THIRD PARTY COLLATERAL ACCOUNT AND THE ASSETS THEREIN, THIRD PARTY PLEDGOR WILL NOT HAVE AN ADVISORY RELATIONSHIP WITH BROKER WITH RESPECT TO THE LAL AGREEMENT, THE LIQUIDITY ACCESS LINE OR THIS PLEDGE AGREEMENT OR WITH RESPECT TO THIRD PARTY PLEDGOR'S DECISION TO PERMIT THE THIRD PARTY COLLATERAL ACCOUNT AND THE ASSETS THEREIN TO BE PLEDGED AS THIRD PARTY COLLATERAL TO SECURE THE LAL OBLIGATIONS OF BORROWER. NEITHER BROKER NOR THIRD PARTY PLEDGOR'S FINANCIAL ADVISOR OR PRIVATE WEALTH ADVISOR, AS APPLICABLE, IS ACTING AS AN INVESTMENT ADVISER IN CONNECTION WITH THE DECISION TO PLEDGE THE THIRD PARTY COLLATERAL ACCOUNT AND THE ASSETS THEREIN AND THIRD PARTY PLEDGOR IS SOLELY RESPONSIBLE FOR THE DECISION TO ENTER INTO THIS PLEDGE AGREEMENT AND TO PLEDGE THE THIRD PARTY COLLATERAL ACCOUNT AND THE ASSETS THEREIN.

(6) Third Party Pledgor understands that actions taken by Bank as lender, and Broker, as securities intermediary, regarding the Third Party Collateral Account, may be directly contrary to Third Party Pledgor's interests as owner of the Third Party Collateral Account and that Bank's and/or Broker's actions, including selling securities in the Third Party Collateral Account, may have adverse consequences for Third Party Pledgor, including realizing taxable gains as a result of any such sale and affecting asset allocation, cash flow, trading activity and investment strategy.

(7) After considering the risks and benefits of entering into this Pledge Agreement, Third Party Pledgor has determined that it is appropriate based on Third Party Pledgor's financial situation and investment objectives.

(8) Third Party Pledgor acknowledges that the Third Party Collateral Account will not have margin privileges, including overdraft, or check writing or debit card privileges while the Third Party Collateral Account is subject to this Pledge Agreement, unless otherwise determined by Bank.

C. Third Party Pledgor acknowledges and agrees that: (1) Bank may share information with Borrower regarding the value of assets in and status of the Third Party Collateral Account; and (2) Bank and Broker may share information with respect to the Liquidity Access Line, the Third Party Collateral Account, and Third Party Pledgor: (i) in the ordinary course of administering the Liquidity Access Line and Third Party Collateral Account; (ii) to protect and enforce Bank's rights with respect to such accounts, this Pledge Agreement and the LAL Agreement; and (iii) as otherwise related to Bank's or Broker's business with Third Party Pledgor or Borrower.

D. If there is more than one Third Party Pledgor, the obligations of such Persons under this Pledge Agreement shall be joint and several.

## 3. Agreement and Acknowledgment of the Liquidity Access Line and LAL Agreement

A. Third Party Pledgor hereby acknowledges and agrees that Borrower is obtaining and maintaining the Liquidity Access Line, and entering into the LAL Agreement with Bank and Third Party Pledgor further acknowledges, agrees and represents to Bank that Third Party Pledgor will derive a substantial benefit from Borrower entering into the LAL Agreement and obtaining and maintaining the Liquidity Access Line.

B. Third Party Pledgor hereby acknowledges receipt of a copy of the LAL Agreement and agrees to retain a copy of such LAL Agreement for Third Party Pledgor's records. Third Party Pledgor acknowledges and agrees that Third Party Pledgor has reviewed and understands the LAL Agreement and has acknowledged and agreed that Borrower is bound by all of the terms and conditions of such LAL Agreement, including, without limitation, the collateral maintenance provisions of such LAL Agreement.

---

For Morgan Stanley Private Bank, National Association Use Only

WHITNEY J SLATEN  
BORROWER NAME

WARREN C SLATEN and SYBIL SLATEN  
THIRD PARTY PLEDGOR NAME

263-045204-724  
LAL NUMBER

THIRD PARTY PLEDGE AGREEMENT  
(05/2018)  
Page 4 of 15  
NY CS 9180884 05/18  
263-045204-724

LENLALTP        LAL  
ID: 290748

C. THIRD PARTY PLEDGOR ACKNOWLEDGES AND AGREES THAT BANK MAY AT ANY TIME AMEND, SUPPLEMENT OR MODIFY THE LAL AGREEMENT AND/OR WAIVE ANY TERM OR CONDITION OF THE LAL AGREEMENT, INCLUDING, BUT NOT LIMITED TO, BY CHANGING THE INTEREST RATE AND/OR INTEREST SPREAD, LETTER OF CREDIT FEES AND/OR OTHER FEES AND CHARGES PAYABLE IN CONNECTION WITH THE LIQUIDITY ACCESS LINE AND CHANGING THE TOTAL ADVANCE LIMIT UNDER THE LAL AGREEMENT. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THIRD PARTY PLEDGOR ACKNOWLEDGES AND AGREES THAT THE LIQUIDITY ACCESS LINE IS A DEMAND LINE OF CREDIT AND THAT BANK MAY DEMAND AT ANY TIME THAT BORROWER REPAY ANY AND ALL CREDIT EXTENDED TO BORROWER UNDER THE LIQUIDITY ACCESS LINE. THIRD PARTY PLEDGOR FURTHER ACKNOWLEDGES AND AGREES THAT ANY OR ALL OF THE FOREGOING MAY BE DONE WITHOUT NOTICE TO THIRD PARTY PLEDGOR AND THAT THIRD PARTY PLEDGOR'S OBLIGATIONS HEREUNDER SHALL NOT BE AFFECTED BY ANY FAILURE OF THIRD PARTY PLEDGOR TO RECEIVE NOTICE OF ANY OF THE FOREGOING.

## 4. Security Interest

A. To secure payment or performance by Borrower of the LAL Obligations under and as defined in the LAL Agreement (the "**LAL Obligations**"), Third Party Pledgor assigns, transfers and pledges to Bank, and grants Bank a first priority Lien on the following assets and rights of Third Party Pledgor, wherever located and whether owned now or acquired or arising in the future:

   (1) the Third Party Collateral Account;

   (2) any and all money, credit balances, certificated and uncertificated securities, security entitlements, commodity contracts, certificates of deposit, instruments, documents, partnership interests, general intangibles, Financial Assets and other investment property now or in the future credited to or carried, held or maintained in the Third Party Collateral Account;

   (3) any and all supporting obligations and other rights ancillary or attributable to, or arising in any way in connection with, any of the foregoing; and

   (4) any and all interest, dividends, distributions and other proceeds of any of the foregoing, including proceeds of proceeds (collectively, "**Third Party Collateral**").

   Upon the failure of Borrower to pay any LAL Obligation as and when due, Bank shall be entitled to exercise the right of a secured party under this Pledge Agreement, any other Loan Document, the UCC and applicable law.

B. Third Party Pledgor will take all actions reasonably requested by Bank to evidence, maintain and perfect Bank's first priority Lien on, and to enable Bank to obtain control over, the Third Party Collateral, including, but not limited to, making, executing, recording and delivering to Bank financing statements and amendments thereto, control agreements, notices, assignments, listings, powers, consents and other documents regarding the Third Party Collateral and Bank's Lien on the Third Party Collateral in a form as Bank reasonably may require. Third Party Pledgor irrevocably authorizes and appoints Bank as collateral agent, to act as Third Party Pledgor's agent and attorney-in-fact to file any documents or to execute any documents in Third Party Pledgor's name, with or without designation of authority.

C. Without in any way limiting Bank's rights and remedies under the collateral maintenance provisions of the LAL Agreement, if at any time, Bank, in its sole discretion, determines that: (1) the value of the Third Party Collateral is insufficient or (2) the types of Financial Assets in the Third Party Collateral Account are not acceptable to Bank, and, in either case, the LAL Obligations are not reduced or additional Collateral satisfactory to Bank is not provided, then Bank shall have the right to liquidate any or all of the Financial Assets in the Third Party Collateral Account and maintain the Third Party Collateral in the Third Party Collateral Account in the form of cash balances.

D. Bank's sole duty for the custody, safe keeping and physical preservation of any Third Party Collateral in its possession will be to deal with the Third Party Collateral in the same manner as Bank deals with similar property for its own account. Third Party Pledgor agrees that Bank will have no responsibility to act on any notice of corporate actions or events provided to holders of securities or other investment property included in the Third Party Collateral. Third Party Pledgor agrees to:

For Morgan Stanley Private Bank, National Association Use Only

WHITNEY J SLATEN — 263-045204-724
BORROWER NAME — LAL NUMBER
WARREN C SLATEN and SYBIL SLATEN
THIRD PARTY PLEDGOR NAME

LENLALTP    LAL
ID: 290748

THIRD PARTY PLEDGE AGREEMENT
(05/2018)
Page 5 of 15
NY CS 9180884 05/18
263-045204-724

(1) notify Bank promptly upon receipt of any communication to holders of the investment property disclosing or proposing any stock split, stock dividend, extraordinary cash dividend, spin-off or other corporate action or event as a result of which Third Party Pledgor would receive securities, cash (other than ordinary cash dividends) or other assets in respect of the investment property; and

(2) immediately upon receipt by Third Party Pledgor of any of these assets, cause them to be credited to the Third Party Collateral Account or deliver them to or as directed by Bank as additional Third Party Collateral.

E. Third Party Pledgor agrees that all principal, interest, dividends, distributions, premiums or other income and other payments received by Bank or credited to the Third Party Collateral Account in respect of any Third Party Collateral may be held by Bank as additional Third Party Collateral or applied by Bank to the Liquidity Access Line. Bank may create a Lien on any of the Third Party Collateral and may, at any time and at its option, transfer any securities or other investment property constituting Third Party Collateral to a securities account maintained in its name but for the benefit of Borrower, cause any Third Party Collateral Account to be redesignated or renamed in the name of Bank for the benefit of Borrower or take any other action with respect to the Third Party Collateral as it deems reasonably necessary to maintain or perfect such Lien.

## 5. Control

For the purpose of giving Bank control over the Collateral Account and in order to perfect Bank's Lien on the Third Party Collateral, Third Party Pledgor consents to compliance by Broker maintaining the Third Party Collateral Account with entitlement orders and instructions from Bank (or from any assignee or successor of Bank) regarding the Third Party Collateral Account without the further consent of Third Party Pledgor. Without limiting the foregoing, Third Party Pledgor acknowledges, consents and agrees that, pursuant to a control agreement entered into between Bank and Broker:

A. In order to enable Third Party Pledgor to trade Financial Assets that are from time-to-time credited to the Third Party Collateral Account, Broker may comply with entitlement orders originated by Third Party Pledgor (or if so agreed by Bank, by an investment adviser designated by Third Party Pledgor and acceptable to Bank and Broker) regarding the Third Party Collateral Account, but only until the time that Bank notifies Broker, that Bank is asserting exclusive control over the Third Party Collateral Account. After Broker has received a notice of exclusive control and has had a reasonable opportunity to comply, it will no longer comply with entitlement orders originated by Third Party Pledgor (or by any investment adviser designated by Third Party Pledgor) concerning the Third Party Collateral Account.

B. Third Party Pledgor acknowledges that Broker is an intended third party beneficiary of this Section 5 and shall be entitled to rely on it to such degree and with the same force and effect as if Broker were a party to the Pledge Agreement.

## 6. Waiver of Defenses; Third Party Pledgor Acknowledgements

A. Notwithstanding any provision of this Pledge Agreement, to the fullest extent permitted by applicable law, Third Party Pledgor hereby waives the right to assert any defense that might be available to Third Party Pledgor under law or equity to enforcement of Bank's rights under this Pledge Agreement, including, without limitation, any defense available to a surety or guarantor, and any defense based on any of the following events:

(1) Bank makes or agrees to a change in any term of the LAL Agreement or otherwise with respect to the Liquidity Access Line, including, but not limited to, extending the time for repayment of an Advance, increasing the interest rate applicable to an Advance, increasing the amount of credit extended to Borrower under the LAL Agreement, changing the Total Advance Limit or changing the lending value with respect to any Third Party Collateral or Other Collateral or increasing letter of credit fees or other fees or charges;

(2) Bank releases or exchanges any Third Party Collateral or Other Collateral, or Bank does not fully establish or perfect its Lien on any Third Party Collateral or Other Collateral;

(3) Bank sells any Third Party Collateral or Other Collateral, whether at a public or private sale and whether the purchaser is Bank, an Affiliate of Bank, or another Person;

---

For Morgan Stanley Private Bank, National Association Use Only

WHITNEY J SLATEN                                         263-045204-724
BORROWER NAME                                            LAL NUMBER
WARREN C SLATEN and SYBIL SLATEN
THIRD PARTY PLEDGOR NAME                                 THIRD PARTY PLEDGE AGREEMENT
                                                         (05/2018)
                                                         Page 6 of 15
                                                         NY CS 9180884 05/18
LENLALTP          LAL                                    263-045204-724
ID: 290748

(4) A law, regulation, or order of any public authority affects Bank's right with respect to any of the LAL Obligations, Borrower, an Other Obligor, any Third Party Collateral or any Other Collateral;

(5) Bank does not attempt to collect any of the LAL Obligations from a Borrower, an Other Obligor, any Third Party Collateral or any Other Collateral, or the absence of any other enforcement action by Bank with respect to any of the foregoing, the LAL Agreement, or the Liquidity Access Line;

(6) All or a portion of Bank's claim for repayment of the LAL Obligations is disallowed under any provision of the United States Bankruptcy Code, under any fraudulent conveyance statute, or any successor statute to any of the foregoing, or under any other law, rule or regulation relating to insolvency or debtor relief;

(7) Bank delays in enforcing or waives any of its rights under this Pledge Agreement or the LAL Agreement;

(8) Bank seeks to enforce this Pledge Agreement without first seeking payment from a Borrower or an Other Obligor, or first trying to realize on any Other Collateral;

(9) Bank fails to notify Third Party Pledgor of any information known to Bank as to a Borrower's financial condition or other circumstances bearing on repayment of the LAL Obligations or the nature, scope and extent of the risks in connection with this Pledge Agreement; or

(10) Any other act or omission by Bank with respect to the LAL Agreement, the Liquidity Access Line, a Borrower, an Other Obligor, any Third Party Collateral or any Other Collateral that would otherwise constitute a defense to the Third Party Pledgor of its obligations hereunder.

For avoidance of doubt, Third Party Pledgor acknowledges and agrees that none of the events described in this Section 6.A shall affect the rights of Bank or the obligations of Third Party Pledgor under this Pledge Agreement. In addition to and without limiting the generality of the foregoing waivers, Third Party Pledgor hereby further expressly waives any and all benefits which may otherwise be available to Third Party Pledgor under Sections 2787 to 2855, inclusive, and Section 3433, of the California Civil Code, as well as any comparable provision of any other applicable law.

B. Third Party Pledgor further acknowledges and agrees that:

(1) Bank has or will enter into the LAL Agreement, provide the Liquidity Access Line to Borrower and extend credit with respect thereto in reliance on Third Party Pledgor's waivers and agreements in Section 6.A;

(2) Bank may, as provided in the LAL Agreement, in its sole discretion and without notice to Third Party Pledgor, change the initial or any subsequent Total Advance Limit and determine the amount (if any) of credit to extend Borrower with respect to the Liquidity Access Line;

(3) **THE OBLIGATIONS SECURED BY THE THIRD PARTY COLLATERAL ARE NOT LIMITED TO A SPECIFIED DOLLAR AMOUNT (INCLUDING THE INITIAL OR ANY SUBSEQUENT TOTAL ADVANCE LIMIT, WHICH MAY CHANGE FROM TIME TO TIME PURSUANT TO THE TERMS OF THE LAL AGREEMENT), AND, ACCORDINGLY, THE ENTIRE AMOUNT OF THE THIRD PARTY COLLATERAL MAY BE APPLIED IN RESPECT OF THE LAL OBLIGATIONS; AND**

(4) Bank has no duty to inform Third Party Pledgor at any time of any fact or circumstance relating to Borrower, an Other Obligor, any Third Party Collateral, any Other Collateral, the LAL Agreement, or the Liquidity Access Line, including any prospective or actual failure of Borrower to perform the LAL Obligations.

## 7. Bank Acknowledgements

Bank acknowledges and agrees that by executing this Pledge Agreement:

A. Third Party Pledgor is not providing a personal guaranty of performance of the LAL Obligations by any Borrower, other than to the extent of the Third Party Collateral pledged hereunder;

B. Third Party Pledgor is not personally liable for the LAL Obligations, other than to the extent of the Third Party Collateral pledged hereunder; and

---

**For Morgan Stanley Private Bank, National Association Use Only**

| | |
|---|---|
| WHITNEY J SLATEN | 263-045204-724 |
| BORROWER NAME | LAL NUMBER |
| WARREN C SLATEN and SYBIL SLATEN | |
| THIRD PARTY PLEDGOR NAME | THIRD PARTY PLEDGE AGREEMENT (05/2018) |
| | Page 7 of 15 |
| | NY CS 9180884 05/18 |
| LENLALTP    LAL | 263-045204-724 |
| ID: 290748 | |