# Morgan Stanley

# Third Party Pledge Agreement

This Third Party Pledge Agreement ("**Pledge Agreement**") is executed by each person signing below (each, a "**Third Party Pledgor**") in favor of Morgan Stanley Private Bank, National Association, a national banking association ("**Bank**"), and is effective as of the effective date of the Liquidity Access Line described on Schedule A hereto ("**Effective Date**").

## Recitals

A. Third Party Pledgor, either individually or with another Person, is an account holder on the Third Party Collateral Account (as defined below).

B. Third Party Pledgor will derive a substantial benefit from a line of credit made available by Bank to a Person other than Third Party Pledgor, and desires to pledge the Third Party Collateral Account as collateral for such line of credit.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, hereby agree as follows:

## 1. Definitions

The following terms shall have the following meanings when used in this Pledge Agreement:

"**Advance**" means an advance or other extension of credit under the Liquidity Access Line made, or to be made, to a Borrower or on a Borrower's behalf.

"**Affiliate**" means, as to any Person, any other Person that, directly or indirectly, controls, is controlled by or is under common control with such Person or is a director or officer of such Person. For purposes of this definition, the term "control" (including the terms "controlling," "controlled by" and "under common control with") of a Person means the possession, direct or indirect, of the power to vote twenty-five percent (25%) or more of the voting stock (or equivalent) of such Person or to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting stock (or the equivalent thereof), by contract or otherwise.

"**Borrower**" shall mean the Person(s) set forth on Schedule A hereto; if there is more than one such Person, the term Borrower shall refer to each such Person individually and to all such Persons collectively.

"**Broker**" means Morgan Stanley Smith Barney LLC and, as applicable, its successors and assigns.

"**FCPA**" shall have the meaning set forth in Section 9.M.

"**Financial Assets**" means all investment property, financial assets, securities, and security entitlements (as such terms are defined in the Uniform Commercial Code) now owned or hereafter acquired by Third Party Pledgor, and all property held now or in the future by Broker for or on behalf of Third Party Pledgor. Without limiting the generality of the foregoing, the term "securities" shall be used in its broadest sense, and shall include without limitation all common and preferred stocks, equity securities, debt securities, investment securities, mutual funds, money market funds, repurchase agreements, banker's acceptances, bonds (including without limitation Eurodollar bonds, "Yankee bonds," dollar-pay Canadian bonds and non-dollar denominated bonds), commercial paper, other evidences of corporate indebtedness, foreign currency contracts, obligations of the U.S. Treasury or U.S. agencies (including without limitation bills, notes and bonds), and negotiable or non-negotiable certificates of deposit; and the term "security entitlements" shall include without limitation all rights with respect to any securities as such term is used herein.

"**Immediate Family Member**" means the spouse/partner, parent, grandparent, sibling, child, step-child, or in-law of the Prominent Public Figure.

"**Interest Spread**" means the percentage rate that is shown in the notice provided by Bank to Borrower stating that Borrower's Liquidity Access Line has been approved or in any subsequent statements sent by Bank to Borrower from time to time.

---

**For Morgan Stanley Private Bank, National Association Use Only**

| | |
|---|---|
| WHITNEY J SLATEN | 263-045204-724 |
| BORROWER NAME | LAL NUMBER |
| WARREN C SLATEN and SYBIL SLATEN | |
| THIRD PARTY PLEDGOR NAME | THIRD PARTY PLEDGE AGREEMENT |



LENLALTP                    LAL
ID: 290748

(05/2018)
Page 1 of 15
NY CS 9180884 05/18
263-045204-724

"**Known Close Associate**" means those individuals that are widely and publicly known to maintain a close relationship to the Prominent Public Figure and can include anyone in any capacity, such as distant relatives, advisors, employees, and business representatives/agents.

"**LAL Agreement**" means the Liquidity Access Line Application and Agreements between Bank and Borrower, including all schedules thereto and the Terms and Conditions incorporated by reference therein, that sets forth the terms and conditions of the Liquidity Access Line, as any of the same may be amended, modified or supplemented from time to time.

"**LAL Obligations**" shall have the meaning set forth in Section 4.A.

"**Letter of Credit Fee**" means with respect to the issuance of each letter of credit under the Liquidity Access Line, a letter of credit fee to be paid by Borrower to Bank which shall be in the amount indicated in a notice provided by Bank to Borrower.

"**Lien**" means any lien, security interest or other charge or encumbrance of any kind, or any other type of preferential arrangement having the effect of a lien or security interest whether created by law, contract, or otherwise.

"**Liquidity Access Line**" shall mean the line of credit provided by Bank to Borrower pursuant to the terms of the LAL Agreement, with respect to which Bank may make Advances and issue letters of credit to or for the benefit of Borrower.

"**Loan Documents**" means this Third Party Pledge Agreement, the LAL Agreement, any other Third Party Pledge Agreements, all financing statements with respect to the Collateral (as defined in the LAL Agreement) or the Third Party Collateral, and any other document or agreement entered into or delivered in connection with the Liquidity Access Line, in each case as amended, supplemented or otherwise modified from time to time.

"**OFAC**" shall have the meaning set forth in Section 9.N.

"**Other Collateral**" shall mean any and all collateral provided to Bank to secure performance of the LAL Obligations, other than the Third Party Collateral provided by Third Party Pledgor under this Pledge Agreement.

"**Other Obligor**" shall mean any Person that is liable to Bank for all or a portion of the LAL Obligations, other than a Borrower, including any guarantor of all or a portion of the LAL Obligations and/or any other third party pledgor.

"**Parties**" means Bank and Third Party Pledgor, collectively.

"**Party**" means Bank or Third Party Pledgor, individually.

"**PEP Entity**" means any corporation, business or other entity that (1) has been formed by, or for the benefit of, a Prominent Public Figure; (2) has a key controller who is a Prominent Public Figure (e.g., the Prominent Public Figure exercises actual or effective control over the entity); or (3) has a Prominent Public Figure that is the ultimate beneficial owner.

"**Person**" means an individual, partnership, corporation (including a business trust), joint stock company, trust, unincorporated association, joint venture, limited liability company or other entity, or a government or any political subdivision or agency thereof.

"**Politically Exposed Person**" means a Prominent Public Figure, Immediate Family Member of a Prominent Public Figure, or a Known Close Associate of a Prominent Public Figure.

"**Prominent Public Figure**" means a natural person currently or formerly entrusted with a senior public role or function (e.g., a senior official in the executive, legislative, military, administrative, or judicial branches of government, whether elected or not) or a major political party, a senior executive of a government-owned corporation or a corporation, business or other entity formed by, or for the benefit of, such a figure.

"**Sanctions**" shall have the meaning set forth in Section 9.N.

"**Sanctioned Person**" shall have the meaning set forth in Section 9.N.

"**State**" means any state in the United States or the District of Columbia.

"**Subsidiary**" of any Person means any corporation, partnership, joint venture, limited liability company, trust or estate of which (or in which) more than fifty percent (50%) of: (a) the issued and outstanding voting stock of such corporation; (b) the interest in the capital or profits of such limited liability company, partnership or joint venture; or (c) the beneficial interest in such trust or estate, is, in each case, at the time directly or indirectly owned or controlled by (i) such Person, (ii) such Person and one or more of its other Subsidiaries or (iii) one or more of such Person's other Subsidiaries.

---

**For Morgan Stanley Private Bank, National Association Use Only**

| | |
|---|---|
| WHITNEY J SLATEN | 263-045204-724 |
| BORROWER NAME | LAL NUMBER |
| WARREN C SLATEN and SYBIL SLATEN | |
| THIRD PARTY PLEDGOR NAME | THIRD PARTY PLEDGE AGREEMENT (05/2018) Page 2 of 15 |
| LENLALTP      LAL | NY CS 9180884 05/18 |
| ID: 290748 | 263-045204-724 |

"**Third Party Collateral**" shall have the meaning set forth in Section 4.A.

"**Third Party Collateral Account**" means individually and collectively, each securities brokerage account maintained with Broker and identified on Schedule A hereto and that is pledged to Bank as Third Party Collateral pursuant to this Pledge Agreement, together with the successors to those identified accounts, irrespective of whether the successor account bears a different name or account number, and for greater certainty, each such securities brokerage account shall be deemed to be a "Collateral Account" under and for the purposes of the LAL Agreement.

"**Third Party Pledgor**" shall have the meaning set forth in the preamble above; provided that if there is more than one Third Party Pledgor, the term shall refer to each such Person individually and to all such Persons collectively.

"**Total Advance Limit**" means the line of credit advance limit set by Bank when a Liquidity Access Line is activated, which may be adjusted from time to time in Bank's sole discretion (including, without limitation, based on the maximum lending value of the Collateral (as defined in the LAL Agreement) and Third Party Collateral) and that is used to determine the maximum amount of credit available to Borrower under the Liquidity Access Line, the Interest Spread and/or the Letter of Credit Fees on a Liquidity Access Line.

"**Uniform Commercial Code**" means the Uniform Commercial Code as enacted in the State of New York, as amended from time to time.

## 2. General

A. **Schedule A** to this Pledge Agreement describes: (a) each Third Party Collateral Account subject to this Pledge Agreement and forming part of the Third Party Collateral; (b) the Liquidity Access Line for which Third Party Pledgor is executing this Pledge Agreement; and (c) each Borrower on the Liquidity Access Line. **Section 11 below (Dispute Resolution) includes a waiver of a number of rights, including the right to bring a lawsuit in court, to serve as a representative in a class action and the right to a jury trial. That section describes the procedure Third Party Pledgor must follow if Third Party Pledgor desires to reject the Dispute Resolution section.**

B. Third Party Pledgor acknowledges and agrees as follows:

   (1) Using securities as collateral for a loan involves a high degree of risk that is not for everyone. For example, (i) if the securities in the Third Party Collateral Account decline in value, (ii) Bank changes advance rates with respect to any securities forming part of the Third Party Collateral as provided in the LAL Agreement, (iii) the value of any Other Collateral declines, or (iv) a Stated Event (as defined in the LAL Agreement) under the LAL Agreement occurs, Bank can take action, without prior notice to Third Party Pledgor, to protect or maintain value in the Collateral Account or to otherwise satisfy the LAL Obligations. Such action may include selling assets in the Third Party Collateral Account. Third Party Pledgor should not enter into this Pledge Agreement unless Third Party Pledgor has independently determined that this transaction, including the risks involved, is suitable for Third Party Pledgor.

   (2) Bank, in its sole discretion, may determine whether the value and type of Third Party Collateral in the Third Party Collateral Account is sufficient collateral for the Liquidity Access Line as provided in the LAL Agreement. While Bank may attempt to notify Third Party Pledgor regarding any deficiency with respect to the Third Party Collateral in the Third Party Collateral Account, Bank is not obligated to do so. Bank may, in its sole discretion, liquidate Collateral in the Third Party Collateral Account to satisfy the collateral requirements for the Liquidity Access Line, as a result of a demand by Bank pursuant to the LAL Agreement or as a result of a Stated Event (as defined in the LAL Agreement) under the LAL Agreement, without notice to Third Party Pledgor and without first requesting additional collateral from Third Party Pledgor or Borrower.

   (3) Liquidation of Third Party Collateral in the Third Party Collateral Account may cause Third Party Pledgor to recognize taxable income or to report losses for tax purposes, or to become subject to other potentially adverse effects such as short swing profit liability under applicable securities laws. Bank may perform such transactions, to the extent permitted by applicable law, without prior notice or advertisement on the market where such business is usually transacted, at a public auction or in a private sale, including transactions with Bank, Broker or their Affiliates for their own account. To the extent permitted by applicable law, Third Party Pledgor waives any right to redeem the proceeds of such transactions without Bank's consent and agrees not to hold Bank liable for taking such actions. Without limiting the foregoing, Third Party Pledgor waives, to the extent permitted by applicable law, any right to the notice of sale of Third Party Collateral, advertisement of such sale and any related provisions of applicable law, including, but not limited to Article 9 of the

**For Morgan Stanley Private Bank, National Association Use Only**

| WHITNEY J SLATEN | 263-045204-724 |
| BORROWER NAME | LAL NUMBER |
| WARREN C SLATEN and SYBIL SLATEN | |
| THIRD PARTY PLEDGOR NAME | THIRD PARTY PLEDGE AGREEMENT (05/2018) |
| | Page 3 of 15 |
| LENLALTP    LAL | NY CS 9180884 05/18 |
| ID: 290748 | 263-045204-724 |

Uniform Commercial Code enacted in the State of New York, or any other comparable law, rule or regulation of any applicable jurisdiction.

(4) **None of Bank's, Broker's nor Third Party Pledgor's financial advisor ("Financial Advisor") or private wealth advisor ("Private Wealth Advisor"), as applicable, provides tax or legal advice.** Third Party Pledgor should consult Third Party Pledgor's own attorney, tax advisor or accountant in order to protect its own interests (which may be different than those of Borrower) for matters involving taxation, tax planning, personal trusts and estate planning or the legal consequences of entering into this Pledge Agreement and by signing this Pledge Agreement, Third Party Pledgor acknowledges and agrees that it has had adequate opportunity to consult with its attorneys, tax advisors and accountants to its satisfaction.

(5) NOTWITHSTANDING ANY ADVISORY RELATIONSHIP THAT THIRD PARTY PLEDGOR MAY HAVE WITH BROKER IN CONNECTION WITH THE THIRD PARTY COLLATERAL ACCOUNT AND THE ASSETS THEREIN, THIRD PARTY PLEDGOR WILL NOT HAVE AN ADVISORY RELATIONSHIP WITH BROKER WITH RESPECT TO THE LAL AGREEMENT, THE LIQUIDITY ACCESS LINE OR THIS PLEDGE AGREEMENT OR WITH RESPECT TO THIRD PARTY PLEDGOR'S DECISION TO PERMIT THE THIRD PARTY COLLATERAL ACCOUNT AND THE ASSETS THEREIN TO BE PLEDGED AS THIRD PARTY COLLATERAL TO SECURE THE LAL OBLIGATIONS OF BORROWER. NEITHER BROKER NOR THIRD PARTY PLEDGOR'S FINANCIAL ADVISOR OR PRIVATE WEALTH ADVISOR, AS APPLICABLE, IS ACTING AS AN INVESTMENT ADVISER IN CONNECTION WITH THE DECISION TO PLEDGE THE THIRD PARTY COLLATERAL ACCOUNT AND THE ASSETS THEREIN AND THIRD PARTY PLEDGOR IS SOLELY RESPONSIBLE FOR THE DECISION TO ENTER INTO THIS PLEDGE AGREEMENT AND TO PLEDGE THE THIRD PARTY COLLATERAL ACCOUNT AND THE ASSETS THEREIN.

(6) Third Party Pledgor understands that actions taken by Bank as lender, and Broker, as securities intermediary, regarding the Third Party Collateral Account, may be directly contrary to Third Party Pledgor's interests as owner of the Third Party Collateral Account and that Bank's and/or Broker's actions, including selling securities in the Third Party Collateral Account, may have adverse consequences for Third Party Pledgor, including realizing taxable gains as a result of any such sale and affecting asset allocation, cash flow, trading activity and investment strategy.

(7) After considering the risks and benefits of entering into this Pledge Agreement, Third Party Pledgor has determined that it is appropriate based on Third Party Pledgor's financial situation and investment objectives.

(8) Third Party Pledgor acknowledges that the Third Party Collateral Account will not have margin privileges, including overdraft, or check writing or debit card privileges while the Third Party Collateral Account is subject to this Pledge Agreement, unless otherwise determined by Bank.

C. Third Party Pledgor acknowledges and agrees that: (1) Bank may share information with Borrower regarding the value of assets in and status of the Third Party Collateral Account; and (2) Bank and Broker may share information with respect to the Liquidity Access Line, the Third Party Collateral Account, and Third Party Pledgor: (i) in the ordinary course of administering the Liquidity Access Line and Third Party Collateral Account; (ii) to protect and enforce Bank's rights with respect to such accounts, this Pledge Agreement and the LAL Agreement; and (iii) as otherwise related to Bank's or Broker's business with Third Party Pledgor or Borrower.

D. If there is more than one Third Party Pledgor, the obligations of such Persons under this Pledge Agreement shall be joint and several.

## 3. Agreement and Acknowledgment of the Liquidity Access Line and LAL Agreement

A. Third Party Pledgor hereby acknowledges and agrees that Borrower is obtaining and maintaining the Liquidity Access Line, and entering into the LAL Agreement with Bank and Third Party Pledgor further acknowledges, agrees and represents to Bank that Third Party Pledgor will derive a substantial benefit from Borrower entering into the LAL Agreement and obtaining and maintaining the Liquidity Access Line.

B. Third Party Pledgor hereby acknowledges receipt of a copy of the LAL Agreement and agrees to retain a copy of such LAL Agreement for Third Party Pledgor's records. Third Party Pledgor acknowledges and agrees that Third Party Pledgor has reviewed and understands the LAL Agreement and has acknowledged and agreed that Borrower is bound by all of the terms and conditions of such LAL Agreement, including, without limitation, the collateral maintenance provisions of such LAL Agreement.

---

**For Morgan Stanley Private Bank, National Association Use Only**

WHITNEY J SLATEN  
BORROWER NAME  
WARREN C SLATEN and SYBIL SLATEN  
THIRD PARTY PLEDGOR NAME

263-045204-724  
LAL NUMBER

LENLALTP   LAL  
ID: 290748

THIRD PARTY PLEDGE AGREEMENT  
(05/2018)  
Page 4 of 15  
NY CS 9180884 05/18  
263-045204-724

C.  **THIRD PARTY PLEDGOR ACKNOWLEDGES AND AGREES THAT BANK MAY AT ANY TIME AMEND, SUPPLEMENT OR MODIFY THE LAL AGREEMENT AND/OR WAIVE ANY TERM OR CONDITION OF THE LAL AGREEMENT, INCLUDING, BUT NOT LIMITED TO, BY CHANGING THE INTEREST RATE AND/OR INTEREST SPREAD, LETTER OF CREDIT FEES AND/OR OTHER FEES AND CHARGES PAYABLE IN CONNECTION WITH THE LIQUIDITY ACCESS LINE AND CHANGING THE TOTAL ADVANCE LIMIT UNDER THE LAL AGREEMENT. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THIRD PARTY PLEDGOR ACKNOWLEDGES AND AGREES THAT THE LIQUIDITY ACCESS LINE IS A DEMAND LINE OF CREDIT AND THAT BANK MAY DEMAND AT ANY TIME THAT BORROWER REPAY ANY AND ALL CREDIT EXTENDED TO BORROWER UNDER THE LIQUIDITY ACCESS LINE. THIRD PARTY PLEDGOR FURTHER ACKNOWLEDGES AND AGREES THAT ANY OR ALL OF THE FOREGOING MAY BE DONE WITHOUT NOTICE TO THIRD PARTY PLEDGOR AND THAT THIRD PARTY PLEDGOR'S OBLIGATIONS HEREUNDER SHALL NOT BE AFFECTED BY ANY FAILURE OF THIRD PARTY PLEDGOR TO RECEIVE NOTICE OF ANY OF THE FOREGOING.**

## 4. Security Interest

A.  To secure payment or performance by Borrower of the LAL Obligations under and as defined in the LAL Agreement (the **"LAL Obligations"**), Third Party Pledgor assigns, transfers and pledges to Bank, and grants Bank a first priority Lien on the following assets and rights of Third Party Pledgor, wherever located and whether owned now or acquired or arising in the future:

   (1) the Third Party Collateral Account;

   (2) any and all money, credit balances, certificated and uncertificated securities, security entitlements, commodity contracts, certificates of deposit, instruments, documents, partnership interests, general intangibles, Financial Assets and other investment property now or in the future credited to or carried, held or maintained in the Third Party Collateral Account;

   (3) any and all supporting obligations and other rights ancillary or attributable to, or arising in any way in connection with, any of the foregoing; and

   (4) any and all interest, dividends, distributions and other proceeds of any of the foregoing, including proceeds of proceeds (collectively, **"Third Party Collateral"**).

   Upon the failure of Borrower to pay any LAL Obligation as and when due, Bank shall be entitled to exercise the right of a secured party under this Pledge Agreement, any other Loan Document, the UCC and applicable law.

B.  Third Party Pledgor will take all actions reasonably requested by Bank to evidence, maintain and perfect Bank's first priority Lien on, and to enable Bank to obtain control over, the Third Party Collateral, including, but not limited to, making, executing, recording and delivering to Bank financing statements and amendments thereto, control agreements, notices, assignments, listings, powers, consents and other documents regarding the Third Party Collateral and Bank's Lien on the Third Party Collateral in a form as Bank reasonably may require. Third Party Pledgor irrevocably authorizes and appoints Bank as collateral agent, to act as Third Party Pledgor's agent and attorney-in-fact to file any documents or to execute any documents in Third Party Pledgor's name, with or without designation of authority.

C.  **Without in any way limiting Bank's rights and remedies under the collateral maintenance provisions of the LAL Agreement, if at any time, Bank, in its sole discretion, determines that: (1) the value of the Third Party Collateral is insufficient or (2) the types of Financial Assets in the Third Party Collateral Account are not acceptable to Bank, and, in either case, the LAL Obligations are not reduced or additional Collateral satisfactory to Bank is not provided, then Bank shall have the right to liquidate any or all of the Financial Assets in the Third Party Collateral Account and maintain the Third Party Collateral in the Third Party Collateral Account in the form of cash balances.**

D.  Bank's sole duty for the custody, safe keeping and physical preservation of any Third Party Collateral in its possession will be to deal with the Third Party Collateral in the same manner as Bank deals with similar property for its own account. Third Party Pledgor agrees that Bank will have no responsibility to act on any notice of corporate actions or events provided to holders of securities or other investment property included in the Third Party Collateral. Third Party Pledgor agrees to:

**For Morgan Stanley Private Bank, National Association Use Only**

WHITNEY J SLATEN | 263-045204-724
BORROWER NAME | LAL NUMBER

WARREN C SLATEN and SYBIL SLATEN
THIRD PARTY PLEDGOR NAME

LENLALTP   LAL
ID: 290748

THIRD PARTY PLEDGE AGREEMENT
(05/2018)
Page 5 of 15
NY CS 9180884 05/18
263-045204-724