UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
WARREN C. SLATEN and SYBIL SLATEN, :
          Plaintiffs, :
v. : **OPINION AND ORDER**
  :
WHITNEY J. SLATEN and MARTHA : 22 CV 9488 (VB)
SLATEN, :
          Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

    Plaintiffs Warren C. Slaten and Sybil Slaten bring this action against their son and daughter-in-law, defendants Whitney J. Slaten and Martha Slaten, respectively, asserting breach of contract, conversion, fraud, and equitable lien claims.

    Now pending is defendants' unopposed motion to dismiss the amended complaint pursuant to Rule 12(b)(6). (Doc. #26).

    For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

## BACKGROUND

    For the purpose of ruling on the motion, the Court accepts as true all well-pleaded allegations in the amended complaint and draws all reasonable inferences in plaintiffs' favor, as summarized below.

    Plaintiffs allege they agreed to help defendants obtain a $406,899.79 line of credit from Morgan Stanley by pledging plaintiffs' assets—primarily retirement accounts—as collateral for the loan (the "Loan"). According to plaintiffs, defendants used the Loan to purchase a home in Rhinebeck, New York (the "Property"). Defendants allegedly needed to use plaintiffs' accounts as collateral because defendants' poor credit prevented them from securing a conventional

1

mortgage.  Accordingly, on June 18, 2018, Morgan Stanley executed a Liquid Asset Line Agreement ("LAL Agreement") signed by defendant Whitney Slaten and a Third Party Pledge Agreement ("PA") signed by plaintiff Warren Slaten.[1]  The LAL Agreement listed three accounts as collateral, two of which are individual accounts of plaintiff Warren Slaten, and one of which is held jointly by plaintiffs.

Plaintiffs and defendants did not enter into a formal written agreement among themselves regarding entry into the LAL Agreement and PA.  However, according to plaintiffs, their agreement to pledge their Morgan Stanley accounts as collateral for the LAL Agreement was contingent upon defendants repaying the Loan within one year using "funds defendants would then be able to obtain through a conventional mortgage on [the Property]."  (Doc. #24 ("Am Compl.") ¶ 5).  Plaintiffs contend this agreement was "discussed and expressed both verbally and within the numerous electronic exchanges between the parties."  (Id. ¶ 4).

According to plaintiffs, defendants defaulted on the alleged agreement by failing to secure a conventional mortgage on the Property and repay the Loan within one year.  Plaintiffs contend they repeatedly demanded defendants make monthly interest payments on the Loan to prevent default, which would put plaintiffs' accounts at risk.  On November 1, 2019, defendants allegedly began making $2,000 monthly payments on the accumulating interest.  However, according to plaintiffs, defendants stopped making monthly payments in May 2022, again putting plaintiffs' assets in jeopardy.

In August 2022, plaintiffs allege they offered to provide a private mortgage to defendants to enable defendants to repay the Loan, which would free plaintiffs' assets from being tied up as

---

[1] The LAL Agreement and PA are attached as exhibits to the amended complaint.  (Docs. ##24-1–24-5).

Loan collateral (as well as provide plaintiffs with the ability to foreclose if defendants became delinquent on payments). Defendants, however, refused this offer and claimed the Loan was "part of their inheritance from plaintiffs, which defendants should receive at this time rather than after the deaths of both plaintiffs." (Am. Compl. ¶ 10).

In August 2022, plaintiffs allege defendants' failure to make monthly payments to Morgan Stanley forced plaintiffs to use personal funds to pay off the balance of the debt, and that plaintiffs had to expend an additional $25,000 in 2022 "to ensure property taxes were paid and prevent a tax lien and potential tax sale of" the Property. (Am. Compl. ¶¶ 11, 24). According to plaintiffs, defendants have refused to agree to any repayment plan and continue to reside at the Property free of any mortgage or rent payments. As a result, plaintiffs allege they have incurred damages of $340,000 and that damages are continuing to accrue.

## DISCUSSION

I. Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2] First, plaintiffs' legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).  "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint."  Id.

II.   Breach of Contract Claim

Defendants argue plaintiffs fail to state a breach of contract claim because they do not allege the existence of an enforceable contract between the parties, and their claim is nevertheless barred by the New York statute of frauds because it cannot be performed within one year and relates to an interest in real property.

The Court disagrees.

A.   Legal Standard

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."  Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011).

A plaintiff must allege facts sufficient to show an enforceable contract existed including facts "relating to the formation of the contract, the date it took place, the contract's major terms, the parties to the contract, or [a defendant's] assent to its terms." Berman v. Sugo LLC, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008); see also Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C., 455 F. App'x 102, 104 (2d Cir. 2012) (summary order). "The existence of a contract may be established through the conduct of the parties recognizing the contract." Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 97 (2d Cir. 2007). "In determining whether the parties' conduct is consistent with the existence of a binding contract, it is necessary that the totality of all acts of the parties, their relationship and their objectives be considered." Id.

Under New York law, an agreement, which by its terms, cannot be performed within one year or concerns a conveyance of an "estate or interest in real property" must be in writing or is barred by the statute of frauds. N.Y. Gen. Oblig. Law §§ 5-701(a)(1), 703(1). The one-year provision in the New York statute of frauds does not preclude an oral contract "unless there is not the slightest possibility that it can be fully performed within one year." Ohanian v. Avis Rent A Car Sys., Inc., 779 F.2d 101, 106 (2d Cir. 1985).

B.   Analysis

First, fairly construed, the amended complaint plausibly pleads the existence of an enforceable agreement between the parties. Defendants contend no contract exists because there was no written agreement between the parties. But plaintiffs do not plead there is a formal written contract to which both parties are signatories. Instead, plaintiffs allege defendants, in consideration of using plaintiffs' assets to secure the Loan, "agreed to repay with interest said sum or any amount thereof utilized by defendants within one year or upon qualifying for a

conventional mortgage, whichever even[t] occurred earlier." (Am. Compl. ¶ 19). Plaintiffs were allegedly induced to enter into this agreement by the promise of repayment "and the family relationship between the parties." (Id. ¶ 15). Plaintiffs allege this agreement was made verbally and via "numerous electronic exchanges." (Id. ¶ 4). As such, plaintiffs have plausibly alleged the existence of an enforceable agreement at this early stage.[3]

Second, the amended complaint plausibly alleges plaintiffs performed by signing the PA and using their assets to secure the Loan for defendants' use.

Third, the amended complaint plausibly alleges defendants breached the agreement by failing to obtain a conventional mortgage and repay the Loan within one year.

Fourth, the amended complaint plausibly alleges damages. As a result of defendants' alleged failure to repay the Loan, plaintiffs had to pay Morgan Stanley monthly interest payments from June 2022 through August 2022 to avoid default. Plaintiffs likewise allege they used personal funds to pay off the debt in August 2022 to avoid default and release their assets from being used as collateral. Therefore, plaintiffs adequately allege they have incurred damages.

Moreover, the agreement, as alleged, is not barred by the New York statute of frauds.

First, plaintiffs allege the parties "agreed the line of credit, to the extent utilized, would be repaid within one year." (Am. Compl. ¶ 3).

---

[3] Although defendants attach several exhibits to their motion to dismiss stating that plaintiffs are "undoubtedly aware" of these documents (Def. Mem. 11), on a motion to dismiss, the Court considers only documents attached to, incorporated by reference in, or integral to the amended complaint. DiFolco v. MSNBC Cable L.L.C., 622 F.3d at 111. As such, the Court has not considered Exhibits 4–9 to defendants' motion. (Docs. ##26-11 to 26-16).

Second, plaintiffs do not allege the agreement conveyed an interest in the Property.[4] In substance, plaintiffs allege defendants agreed to pay back the Loan within one year or upon obtaining a conventional mortgage (whichever occurred first) in exchange for using plaintiffs' assets to secure the Loan. This type of agreement does not fall within the ambit of the statute of frauds. See Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l. Ltd., 483 F. Supp. 3d 195, 206 (S.D.N.Y. 2020) (finding the New York statute of frauds inapplicable where plaintiffs "do not allege that they obtained or conveyed any interest in real property").

Accordingly, plaintiffs' breach of contract claim may proceed.

III.     Conversion Claim

Defendants argue plaintiffs' conversion claim must be dismissed because plaintiffs have not plausibly alleged they wrongfully took or detained plaintiffs' property to the exclusion of plaintiffs' rights, and the three-year statute of limitations has run.

The Court agrees the conversion claim must be dismissed, but for a different reason, namely that it is duplicative of the breach of contract claim.

Generally, "[f]or a claim of conversion to survive a motion to dismiss, it is not enough merely to incorporate the factual allegations relating to breach of contract." Flatscher v. The Manhattan Sch. of Music, 551 F. Supp. 3d 273, 288 (S.D.N.Y. 2021). "Rather, a conversion claim may only succeed if a plaintiff alleges wrongs and damages distinct from those predicated on a breach of contract." Id.

---

[4] Plaintiffs state they "believed [the Property] would be collateral for any advancements they may be forced to make over and above the pledge of their holdings" (Am. Compl. ¶ 3), but this allegation, construed in plaintiffs' favor, suggests plaintiffs believed defendants had a good faith basis to represent they could repay any additional amounts defendants ended up expending—not that the parties agreed plaintiffs would receive a conveyance of real property.

Plaintiffs' conversion claim is neither premised on distinct facts nor seeks distinct damages from plaintiffs' breach of contract claim.  Both claims rest on defendants' alleged failure to qualify for a conventional mortgage or repay the Loan and seek the same damages.

Accordingly, plaintiffs' conversion claim must be dismissed.

IV. Fraud Claim

Defendants argue plaintiffs' fraud claim must be dismissed because plaintiffs fail to plead defendants knew, when the alleged agreement was entered, they would not fulfill its terms.

The Court agrees the fraud claim must be dismissed, but because it is duplicative of the breach of contract claim.

"A fraud claim is not sufficiently stated where it alleges in essence that a defendant did not intend to perform a contract with a plaintiff when he made it."  Meehan v. Meehan, 227 A.D.2d 268, 270 (1st Dept. 1996)); see also FPP, LLC v. Xaxis US, LLC, 764 F. App'x 92, 94 (2d Cir. 2019) (summary order) ("A fraud claim is tenable only when the fraud alleged is collateral or extraneous to the contract" meaning the contract "does not address the factual bases of the fraud claim.").  In substance, plaintiffs' fraud claim is based on allegedly false statements inducing plaintiffs into believing defendants would perform, and accordingly, arises from the same facts as those underlying the breach of contract claim.  In addition, both causes of action seek the same damages.

Accordingly, plaintiffs' fraud claim must be dismissed.

V. Equitable Lien Claim

Defendants argue plaintiffs' claim for an equitable lien on the Property is not appropriate because damages, a legal remedy, is available.

The Court agrees.

When a claim "lies solely at law for money damages, the remedy of an equitable lien is unwarranted." Meehan v. Meehan, 227 A.D.2d at 269–70.  Because a plaintiff "can be adequately compensated for breach of contract . . . by monetary damages, the cause of action for an equitable lien [is] correctly dismissed." Normandy Real Est. Partners LLC v. 24 E. 12th St. Assocs. LLC, 168 A.D.3d 429, 431 (1st Dept. 2019).  Here, in connection with their breach of contract claim, plaintiffs seek, and can be adequately compensated by, monetary damages.

Accordingly, plaintiffs' equitable lien claim must be dismissed.

## CONCLUSION

The motion is GRANTED IN PART and DENIED IN PART.

All of plaintiffs' claims are dismissed except for the breach of contract claim, which shall proceed.

By November 28, 2023, defendants shall file an answer to the amended complaint.

By separate Order, the Court will schedule an initial conference.

The Clerk is instructed terminate the motion.  (Doc. #26).

Dated: November 14, 2023
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge